**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CASCADES BRANDING INNOVATION LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 11-CV-2519 |
| WALGREEN CO., BEST BUY CO., INC., EXXON MOBIL CORPORATION, TARGET CORPORATION, and LIMITED BRANDS, INC., | Judge Harry D. Leinenweber |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**CASCADES BRANDING'S MOTION TO DISQUALIFY**
**BEST BUY'S NON-LOCAL ATTORNEYS, ROBINS, KAPLAN, MILLER, & CIRESI**

Cascades Branding Innovation ("Cascades Branding") moves this Court to disqualify defendant Best Buy's non-local counsel, Robins, Kaplan, Miller & Ciresi, L.L.P. Robins Kaplan should be disqualified because it formerly represented and/or prospectively represented two companies founded, managed and owned by Anthony O. Brown in patent litigation and licensing matters that are substantially related to the present patent litigation matter. The interests of Robins Kaplan's current client, Best Buy, are now materially adverse to Cascades Branding, a company also founded, managed and owned (indirectly) by Mr. Brown. Cascades Branding has not consented to this adverse representation.

**I.      Background**

Mr. Brown is the President and founder of Cascades Branding. *See* Declaration of Anthony O. Brown at ¶1 (hereafter cited as "Brown Decl. at ___"). Mr. Brown was also the President and co-founder of a company called Techsearch, LLC. Brown Decl. at ¶1. Both

1

Techsearch's and Cascades Branding's business was and is to assist inventors and their companies to overcome obstacles to effective patent licensing. They level the playing field between small entities and the often-giant enterprises that might otherwise trample on patent rights. Brown Decl. at ¶3. Techsearch's philosophy was, and Cascades Branding's philosophy is, that size asymmetries between the inventor and the infringer ought not skew outcomes, and the only determinative factor in a patent infringement matter should be the merits. Brown Decl. at ¶3. Both Techsearch and Cascades Branding realize returns for themselves and their sponsored inventors through licensing, litigation or resale of patent rights. Brown Decl. at ¶3. As such, they were and are essential links in the innovation economy. They help bring innovators their due rewards, and they help to bring about lawful technology transfer.

Since 2002, Robins Kaplan represented Techsearch in certain licensing and litigation matters. Brown Decl. at ¶4. Among the matters in which Robins Kaplan represented Techsearch were two patent infringement lawsuits: one in the Northern District of California, styled *Chan, et al. v. Intuit, et al.*, No. 02 C 2878 (N.D. Calif.) and another in the Northern District of Texas, styled *Chan v. Brother International, et al.*, No. 02 C 1022 (N.D. Tex.). Brown Decl. at ¶5. Techsearch was one of the plaintiffs in each of those lawsuits. Techsearch's lead attorneys of record were Robins Kaplan, including Ronald J. Schutz and Emmett J. McMahon (Mr. McMahon has appeared here for Best Buy). Robins Kaplan continued to represent Mr. Brown's company, Techsearch, in these various matters until late 2004. Brown Decl. at ¶¶6-7.

In early 2005, Mr. Brown sold Techsearch. Brown Decl. at ¶1. In 2009, he formed a new company to engage in business similar to that of Techsearch. Brown Decl. at ¶2. That company is Cascades Ventures, LLC. Brown Decl. at ¶2. Cascades Ventures is the sole member-owner of the plaintiff here, Cascades Branding Innovations, LLC and Brown is the owner of Cascades

Ventures. Brown Decl. at ¶2. In the summer of 2010, under Cascades Ventures, Mr. Brown again approached attorneys at Robins Kaplan to represent his company in a certain patent matter involving the enforcement or licensing of a patent portfolio. Brown Decl. at ¶8. Mr. Brown had numerous communications with at least one Robins Kaplan attorney, particularly Schutz, regarding potential enforcement or licensing considerations. Brown Decl. at ¶¶9-10. Robins Kaplan and Mr. Brown did not reach terms for representation with respect to this patent portfolio, but Schutz did invite Mr. Brown to "work together in the future." Brown Decl. at ¶¶9-10. That was in May 2011, *after* Best Buy had already received its Notice of Infringement. Brown Decl. at ¶11.

As part of its effort to help Dr. Steven K. Gold (the inventor of the Cascades Branding portfolio and the patent-in-suit here), Cascades Branding contacted the infringing parties in this lawsuit. Brown Decl. at ¶12. Prior to filing suit, Cascades Branding tried to reach a business solution involving licensing of the patented technology at issue. Defendant Best Buy was one of the companies contacted. On April 14, 2011, Cascades Branding's attorneys sent Best Buy a Notice of Infringement and licensing proposal. Brown Decl. at ¶13. In response, Best Buy's inside counsel sent an email dated May 6, 2011, promising to respond substantively to the April 14, 2011, letter. Despite this promise, Best Buy did not respond substantively. Brown Decl. at ¶14.

On June 28, 2011, Cascades amended its complaint here to add additional infringing parties, including Best Buy. Though Mr. Schutz expressed hope in May 2011 that Robins Kaplan and Mr. Brown would "work together in the future," Brown Decl. at ¶10, Robins Kaplan lost no time in working against Mr. Brown and his companies. On September 19, 2011, after Robins Kaplan appeared in this case, Mr. Brown sent an email message to Mr. Schutz pointing out to

him that his firm had taken on representation of at least two companies directly adverse to Mr. Brown's company, Cascades Branding. Brown Decl. at ¶15. Mr. Schutz did not respond substantively to Mr. Brown's email. Mr. Emmett McMahon sent an email message to Cascades Branding's attorney on October 10, 2011. Mr. McMahon did not reveal any information about Robins Kaplan's check of conflicts before representing Best Buy against Cascades Branding. Instead, Mr. McMahon claimed that Robins Kaplan never represented Cascades Branding, and claimed that any prior representation of Mr. Brown's other company "is long over." Brown Decl. at ¶16. This response did not address the substantial relatedness of the *issues* among commonly-managed former-client companies. Robins Kaplan's decision not to acknowledge its conflict-of-interest necessitated the present motion.

## II.    The Ethics Rules Require Disqualification of Robins Kaplan.

Cascades Branding is mindful that motions of this type are sometimes disfavored. When unfounded, such motions can be used for harassment. And, the result of the motion might deprive a client of its chosen advocate. Cascades Branding therefore raised these issues first with Best Buy's attorneys directly in an effort to resolve them short of this motion. That effort was unsuccessful.

While the Court should exercise caution on a motion to disqualify, that caution must be balanced against the need to protect the attorney-client relationship "by ensuring that clients receive the undivided loyalty of their legal representatives." *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997). Indeed, the ethics rules applicable in these cases speak in mandatory terms. The applicable rules state that a lawyer "shall not" represent another client under certain circumstances. In other words, once a conflict of interest is found, absent waiver or consent (neither of which is present here) disqualification is required. Thus, under proper

4

circumstances, courts do not hesitate to disqualify a party's chosen representative, because failure to do so would compromise the attorney-client relationship with respect to both the former and current client.

The ethics rules applicable to attorneys who practice before this Court do not permit Robins Kaplan to represent Best Buy and, therefore, require disqualification. ABA Model Rule 1.9(a) provides as follows:[1]

> Rule 1.9 Duties to Former Clients
>
> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

The inquiry under Rule 1.9 thus has three main requirements: (1) a former client relationship; (2) substantial relationship between the prior engagement and the current matter; and (3) material adversity between the former client's and current client's interests. As noted more fully below, each of these requirements is met.

### A. Mr. Brown's Companies, Techsearch and Cascades Ventures, are Former Robins Kaplan Clients.

Robins Kaplan lawyers were Techsearch's, Cascades Ventures', and Mr. Brown's attorneys, which disqualifies Robins Kaplan from representing Best Buy. The determination of whether an attorney-client relationship existed and the scope of that relationship is a fact-based inquiry centering on the expectations of the client. *See, e.g., Bd. of Managers of Eleventh Street Loftominium Ass'n v. Wabash Loftominium, L.L.C.*, 876 N.E.2d 65, 74 (Ill. App. 1st Dist. 2007)

---

[1] Under the Local Rules of the Northern District of Illinois, the applicable ethics rules are the ABA Model Rules except to the extent that they conflict with the Illinois Rules or the state rules of the nonlocal attorney. *See* L.R. N.D. Ill. 83.50. Here, both ABA Model Rule 1.9(a) and Illinois' and Minnesota's Rules of Professional Conduct 1.9(a) are nearly identical.

(cited hereafter as "the *Loftominium Case*"). In assessing whether an attorney client relationship existed, in the context of corporations, a strict identity of entities is not required. The "former client" relationship can exist, for example, when there is a substantial overlap between the managing agents of the former and current clients. *Id.*

The *Loftominium Case* was a consolidated appeal of two owners' suits against developers of loft conversions in Chicago. Attorney David Sugar represented both plaintiffs while he was affiliated with one firm. He changed firms while the suits were pending, joining a second firm, Arnstein & Lehr. Leave was granted to substitute Sugar's new firm as plaintiffs' counsel. The defendants, however, then moved to disqualify Sugar and Arnstein on the grounds that a conflict of interest existed. Specifically, the defendants argued that, while not literally identical, Arnstein's former clients and the current defendants "were or are managed by the same individuals." *Id.* at 67.

Noting that the general rule for the conflict-of-interest analysis is that corporations are distinct entities, the Court then looked to a notable exception:

> [T]here may well be particular circumstances that would require the lawyer to consider a subsidiary or other constituent of a corporate client to be a client of the lawyer as well. Such instances could include, for example, situations where the lawyer's work for a corporate parent involves direct contact with its subsidiaries and the receipt of [confidential or secret] information concerning the subsidiaries . . . *or situations where the client corporation and the subsidiary [or other constituent] in question have the same management group.* Another situation that would require the lawyer to treat a corporate affiliate as a client is where one entity could be considered the alter ego of the other. (Emphasis added.)

*Id.* at 72-73 (emphasis in original, internal marks omitted) (citing ISBA Op. No. 95-15, slip op. at 4 (May 17, 1996)). The court noted that the management group of Arnstein's former clients and the current defendant were made up of the same people. *Id.* at 73 ("Arnstein has been representing corporations that are related to the corporate defendants and are run by substantially

the same management group consisting of the individual defendants."). Therefore, the court held that a shared management group as between the actual clients and the current adverse party precluded the representation.[2] Put another way, the lawyer and his firm were disqualified from representing someone adverse to a company he had not specifically represented, but that shared management with those he did.

Like the facts in the *Loftominium Cases*, the management groups of Techsearch and Cascades Ventures (Robins Kaplan's former clients) and Cascades Branding (the materially-adverse party to Robins Kaplan's current client) are substantially the same. Simply put, Mr. Brown was the President and manager of Techsearch and Cascades Ventures, and he is the current President and manager of Cascades Branding. Brown Decl. at 1-2. The "management group" of both sets of clients is the same. Thus, Cascades Branding (and Mr. Brown) would be considered a former client for purposes of the Rule 1.9 analysis.

### B.    Either Prior Relationship Disqualifies Robins Kaplan

The Court need only analyze either of the 2002-2004 Techsearch relationship, or the 2009-2011 Cascades Ventures relationship, to disqualify Robins Kaplan. Both raise a bar to representation of current clients with interests materially adverse to Mr. Brown's companies.

As noted above, Robins Kaplan cannot credibly argue the absence of a former client relationship with regard to Techsearch. It appeared in federal court for Techsearch over a period of years. Therefore, there is no question Rule 1.9 applies. Further, whether Cascades Ventures

---

[2] Although the *Loftominium Case* involved a both a former- and current-client analysis, and performed much of its analysis under Rule 1.7, on this point the Rule 1.9 analysis is the same. *Cf. Guillen*, 956 F. Supp. 1416 (noting the similarities between two ethics rules a touchstone of which was whether an attorney-client relationship existed) (*citing, inter alia, AVR, Inc. v. Cemstone Prods Co.*, No. 3-92-551, 1993 U.S. Dist. Lexis 21258, at *1 (D. Minn. Mar. 25, 1993) (stating Rules 1.7 and 1.9 are not implicated unless the party seeking disqualification shows that an attorney-client relationship existed)).

was a former client, implicating Rule 1.9 directly, or a simply a "prospective client," will not matter. Even if Robins Kaplan argues that the 2009-2011 Cascades Ventures relationship did not amount to a "former client" situation under Rule 1.9, the ethics rules still require disqualification. Rule 1.18 makes that clear.

ABA Model Rule 1.18, which is consistent with the same numbered rule in both Illinois and Minnesota, is entitled "Duties to Prospective Client." With exceptions that do not apply here, Rule 1.18 applies the "former client" analysis under Rule 1.9 even when the consultation falls under a prospective relationship. *See* Model Rules of Prof'l Conduct R. 1.18(b). "Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client." *Id.* Thus whether the Court analyzes either or both relationships, and whether or not Robins Kaplan argues no client-lawyer relationship arose in 2009-2011, disqualification is necessary.

### C. The Former Techsearch and Cascades Ventures Matters are Substantially Related to the Cascades Branding Current Matter.

The matters in which Robins Kaplan represented Techsearch and Cascades Ventures, and the current matter in which Robins Kaplan is materially adverse to Cascades Branding, are substantially related. The Illinois Supreme Court has adopted a three-part test to determine whether a substantial relationship exists.

> [1 T]he court first must make a factual reconstruction of the scope of the former representation. Then, [2] it must determine whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Finally, [3] the court must consider whether the information is relevant to the issues raised in the litigation pending against the former client.

8

*LaSalle Nat'l Bank v. County of Lake*, 703 F.2d 252, 256 (7th Cir. 1983); *Schwartz v. Cortelloni*, 685 N.E.2d 871, 878 (Ill. 1997). Doubts as to whether matters are substantially related are resolved in favor of disqualification. *See, e.g., Skokie Gold Standard Liquors v. Joseph E. Seagram & Sons*, 452 N.E.2d 804, 814 (Ill. App. 1st Dist. 1983). Upon proof of a substantial relationship, there is an irrebuttable presumption that confidential information relevant to the current dispute passed between attorney and client in the former representation. *See, e.g., Skokie Gold Standard*, 452 N.E.2d at 1055; *see also SK Handtool Corp. v. Dresser Indus., Inc.*, 619 N.E.2d 1282, 1289 (Ill. App. 1st Dist. 1993).

The three-part inquiry for substantial relatedness is satisfied in this case. Robins Kaplan formerly represented Mr. Brown and his companies in patent licensing and/or litigation matters. Brown Decl. at ¶¶4-8. It negotiated several licensing deals on behalf of Techsearch. Brown Decl. at ¶6. And, in at least two instances, Robins Kaplan filed and litigated federal patent infringement lawsuits on Techsearch's behalf. Brown Decl. at ¶5. In those lawsuits, Mr. Brown was in regular contact with Robins Kaplan's Emmett McMahon or Ronald Schutz about the representation. Brown Decl. at ¶6. In the course of those engagements, Mr. Brown and Robins Kaplan had extensive privileged conversations regarding not only the merits of infringement issues, but also settlement, damages in the form of a reasonable royalty, and royalty approaches in pursuit of amicable licensing agreements. Brown Decl. at ¶6. Such matters, particularly the settlement, royalty rate, licensing, and damages matters, are directly relevant to the present matter. *See, e.g.*, *Avocent Redmond Corp. v. Rose Elecs.*, 491 F. Supp. 2d 1000, 1007-08 (W.D. Wash. 2007).

*Avocent* confirms the substantial relatedness here. There, the conflicted attorney represented the client regarding licensing and enforcement of its patent portfolio. *Id. at* 1006.

The former client's licensing practices, "including the terms upon which [it] would be willing to license the patents – may be relevant to a reasonable royalty analysis." *Id.* Consequently, the court held that representing the former client on licensing matters precluded current adverse representation because the knowledge gained in the prior representation.

As in *Avocent*, Robins Kaplan learned of Mr. Brown's views regarding terms on which he would be willing to license patents and portfolios he managed. Brown Decl. at ¶6. More generally, Robins Kaplan learned of Mr. Brown's strategies in managing what is now known as an "NPE" (or "Non-Practicing Entity") and how such a status impacts the appropriate royalty analysis. These views, communicated to Robins Kaplan's attorneys in confidence, would be relevant to at least a reasonable royalty analysis in this case as well as to any continued licensing and settlement efforts. Robins Kaplan's' attorneys could not maintain the confidences of its former client without compromising its duties to its current client. Likewise, in advocating zealously on behalf of Best Buy, Robins Kaplan will face an extreme risk that it will compromise the confidences of its former relationship with Mr. Brown and his Techsearch and Cascades Ventures companies. Although this is not a close case, any doubts as to the relatedness ought to be resolved in favor of disqualification. *See Skokie Gold Standard*, 452 N.E.2d at 814.

**D.    The Interests of Robins Kaplan's Former and Current Clients are Materially Adverse**

Cascades Branding's interests and Best Buy's interests are materially adverse. Cascades Branding is suing Best Buy for patent infringement. It is difficult to imagine a starker example of material adversity. Indeed, many courts addressing disqualification under Rule 1.9 simply assume adversity when the former and current clients are opponents in a lawsuit. *See, e.g., The Loftominium Cases*, *supra*. As adverse opponents in this litigation, the interests of Mr. Brown's

current company, Cascades Branding, and Robins Kaplan's current client, Best Buy, are materially adverse.

## CONCLUSION

Robins Kaplan formerly represented Mr. Brown's companies Techsearch and Cascades Ventures in various patent licensing and litigation matters. In the course of its representation, it obtained in confidence Mr. Brown's views regarding settlement, licensing and damages analyses from an NPE perspective. In this litigation, Robins Kaplan represents Best Buy, which has been sued by Mr. Brown's company, Cascades Branding. Possible settlement, licensing rates and reasonable royalty analyses will again play a part in this matter. Robins Kaplan cannot serve the interests of its current client regarding settlement, licensing and damages involving this NPE plaintiff without jeopardizing the client confidences it had with respect to its former NPE clients, managed by the same person. Since Rule 1.9 speaks in mandatory terms ("shall not represent"), Cascades' motion should be granted and Robins Kaplan should be disqualified as Best Buy's counsel. Best Buy will not be unfairly prejudiced as it will continue to be represented by at least its local counsel once Robins Kaplan is disqualified.

Dated: October 28, 2011

Respectfully submitted,

/s/ Michael R. La Porte
Robert P. Greenspoon (6229357)
rpg@fg-law.com
Michael R. La Porte (6237510)
mrl@fg-law.com
Flachsbart & Greenspoon, LLC
333 N. Michigan Ave., 27th Floor
Chicago, IL 60601
T: 312-551-9500
F: 312-551-9501

## CERTIFICATE OF SERVICE

The undersigned attorney of record certifies that service of the foregoing document has been made on October 28, 2011, via the Court's CM/ECF system based on its electronic filing, under Local Rule 5.5(a)(3) and General Order 09-014 Section X.E. In this manner, service has been made on all attorneys of record.

/s/ Michael R. La Porte
Michael R. La Porte